Ashburn, J.
Is the verdict supported by the evidence ?' This is the only question we will consider.
The statute provides: “ That it shall be unlawful for any person to exercise the trade or occupation of auctioneer, or-to sell, by way of public auction, vendue, or outcry, either directly or indirectly, in this state, any property or effects whatever, . . without a license as herein provided.”
As we dispose of the case exclusively on the sufficiency of the proofs to support the verdict, we here recite the whole of it, as set out in the bill of exceptions.
John M. Kurehner testified: “ That the defendant, without license as auctioneer first obtained from said court, did sell, at the time alleged in said indictment, certain goods therein described, to wit, dry goods and notions in the- *481 manner following, that within said defendant’s store, in the town of Defiance, in said county, he offered in loud language indiscriminately to divers persons therein being,the said goods, at a price several times above his regular retail price, and so kept offering the same at a lower and lower price, thus himself running said goods down andrefusingto take an offer for them above his regular retail price, until he had brought them down to such price, when having received an offer of purchase at said price from a person therein being, the defendant sold him the said goods.”
The defendant being sworn, “ testified and admitted that he did sell said goods at the time, and in the manner and form above set forth.” This was all the testimony.
The statute regulating sales at auction provides that all property and effects sold by auction, shall, in all cases, be sold to the highest bidder. An auction sale is a public competitive sale. The person who conducts such sale is an auctioneer. He is supposed to adopt the occupation as a business and mode of acquiring pecuniary gain to himself, and the government demands from him a sum of money for the right, to the exclusion of other persons, to exercise the occupation. It is part of the auctioneer’s engagement, in exercising his calling, trade, or occupation, to invite and excite competition of bidding, and to dispose of the property to the highest bidder.
This practice is said to have originated with the Romans, who gave it the descriptive name of audio, an increase, because the offered property was sold to him who would offer the most for it. This method of sale was established by the Romans for the disposal of military spoils, and was conducted sub hasta — that is, under the spear ; on such occasions the spear was stuck in the ground. This practice has passed away as to the spear, but the method of sale by auction continues.
At a later day another mode of sale by auction came into practice, called the “ sale by the candle,” or “ by the inch of candle.” The origin of this expression arose from the *482 use of candles as a means of measuring time. It was declared the goods could be continued to be offered to bidders for so long a time only as would suffice for the burning of one inch of candle. When the measure was wasted to that extent, the highest bidder was then declared to be the purchaser. 3 P. Cyc. Still another method of auction sale is practiced in modern times. This one is called a Dutch auction, indicating the local origin of the practice. This method consists in the public offer of the property at a price beyond its value, and then gradually lowering the price until some one becomes the purchaser. 3 P. Cyc.
At auctions the bidders fix by competition the price at which the offered property is sold. This competition is an element of each offer and each bid. Into each of the methods .named, competition is a necessary element in the offer, the bid and the act of selling the offered property. In rthe Dutch method a person wishing to buy can, at any time while the article is offered for sale, accept the auctioneer’s •offer, claim the property at that price, and close the sale .thereof.
The evidence in this case discloses that Crandall had ;& store in which he had dry goods and notions for sale ; that upon his dry goods and notions he had a regular fixed retail price. It appears clear to us that the •.method adopted by him to dispose of his property did mot in any degree involve public competition. In fact, •.the competitive element that distinguishes auction sales •.from others, was wholly wanting. He offered his goods for sale in an unusual manner, and used “louder language” in their sale than retail merchants usually do; yet this fact is evident — he had a fixed regular retail price ■ on his goods, and in no case sold them or any part of them for more or less than his fixed regular retail price.
The witness says, “ he refused to take an offer for them .above his regular retail price,” and only sold them when he “ received an offer of purchase at said price.” As his sales •excluded all competitive bidding, he in no criminal sense .exercised the trade or occupation of auctioneer, and we fail *483 to discover wherein he was shown by the proofs to have violated the provisions of the statute.
His method and manner of selling his property may have violated good taste, but as he fixed his own price upon his property, and that price was his customary retail price, he did not exercise the trade and occupation of auctioneer, who is defined to be “ a person who disposes of goods or lands by public sale to the highest bidder.”
The rule of law is well established that in criminal eases tried upon an issue of not guilty, the evidence must, to warrant a conviction, show the guilt of the accused clearly and beyond reasonable doubt. Where there is a failure of proofs, the accused should go acquit. In this case we think the evidence falls wholly short of establishing the guilt of the accused.
His request for a new trial should have been granted.

Judgment reversed and cause remanded.